UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MONICA CLEMENS,

        Plaintiff,

        v.

J.P. MORGAN CHASE NATIONAL
CORPORATE SERVICES, INC., *et al.*,

        Defendants.
_____/

No. C-09-3365 EMC

**CORRECTED ORDER GRANTING
DEFENDANTS' MOTIONS TO DISMISS**

**(Docket Nos. 30, 32)**

(Correction in bold on page 8, line 25)

Plaintiff Monica Clemens has filed suit against Defendants JPMorgan Chase Bank, N.A. ("JPMorgan") and First American Title Insurance Company ("FAT"), asserting three causes of action: (1) violation of the Truth in Lending Act ("TILA") and its implementing regulation, known as Regulation Z[1]; (2) violation of California Civil Code § 2953.52; and (3) violation of California Business & Professions Code § 17200. Both Defendants have filed motions to dismiss the FAC. Having considered the parties' briefs and accompanying submissions, as well as all other evidence of record, the Court hereby **GRANTS** both Defendants' motions. As discussed below, dismissal of some of the claims shall be with prejudice but, for other claims, Ms. Clemens shall be given leave to amend.

---

[1] In her first amended complaint ("FAC"), Ms. Clemens has formally pled two separate causes of action, one for violation of TILA and the other for violation of Regulation Z. However, as noted above, Regulation Z is simply TILA's implementing regulation. *See McCoy v. Chase Manhattan Bank, USA*, 559 F.3d 963, 964 (9th Cir. 2009) (noting that Regulation Z was adopted by the Federal Reserve Board to implement TILA). Therefore, the Court addresses the two causes of action as one.

## I. FACTUAL & PROCEDURAL BACKGROUND

In her FAC, Ms. Clemens alleges that, in 2004, she purchased certain real property located in Marin County. *See* FAC ¶ 16. Ms. Clemens was able to purchase the property by obtaining a "no doc" loan. *See* FAC ¶ 17. According to Ms. Clemens, she thought she had a long-term fixed rate loan, as reflected by the Truth in Lending Statement, but, approximately twenty-one months later, she was notified by the servicer of the loan that the interest rate on the loan was going to adjust to 10%. *See* FAC ¶ 18. Ms. Clemens therefore was forced to refinance the loan. Ultimately, she refinanced three times, all in the year 2006: "(1) to refinance out of the current loan; (2) to refinance into a negative amortized loan which adjusted upward 3 times in 30 days; and (3) to refinance into a seven year fixed rate subprime note." FAC ¶ 18.

Although not entirely clear based on the allegations in the FAC, Ms. Clemens represented at the hearing on Defendants' motions that the lender on the original refinance loan was Capital One; that one of the subsequent lenders was GMAC; and that the final lender was JPMorgan. The Court takes judicial notice of two publicly recorded deeds of trust which reflect that Ms. Clemens had two different loans with JPMorgan. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (noting that a court may take judicial notice of matters of public record); Docket No. 30 (RJN, Exs. 1-2) (deeds of trust). Fidelity National Title Company was the trustee for the first deed of trust; Douglas E. Miles was the trustee on the second deed of trust. *See* Docket No. 30 (RJN, Exs. 1-2).

The Court also takes judicial notice of additional public records. Those records reflect as follows: On or about February 27, 2009, a notice of default was recorded with respect to the first JPMorgan loan. *See* Docket No. 30 (RJN, Ex. 3) (notice of default). Subsequently, on April 1, 2009, there was a substitution of trustee for the first loan. Thus, First American Loanstar Trustee Services -- which also operates under the name FAT, *see* https://www.loanstartrustee.com (last visited on 11/23/2009) -- became the trustee for the first loan. *See* Docket No. 30 (RJN, Ex. 4) (substitution of trustee). Several days later, on or about April 9, 2009, JPMorgan assigned the first loan to Bank of America, N.A. *See* Docket No. 30 (RJN, Ex. 5) (assignment of deed of trust). Then, on or about May 28, 2009, a notice of trustee's sale was recorded in connection with the first loan, as requested by FAT. *See* Docket No. 30 (RJN, Ex. 6) (notice of trustee's sale). Although the

notice indicated that the sale would take place on June 17, 2009, the parties agree that no sale took place on that date and that Ms. Clemens remains the owner of the property.

According to Ms. Clemens, prior to the recording of the notice of default in February 2009, she informed JPMorgan that she was under extreme financial duress and also asked it for a loan modification. *See* FAC ¶ 25. Ms. Clemens also alleges that, in March 2009[2] and again in April 2009, *i.e.* after the notice of default was recorded, she asked for a loan modification. *See* FAC ¶ 25. JPMorgan, however, failed to respond to her until on or about May 15, 2009. *See* FAC ¶¶ 27, 36. By that time, however, Ms. Clemens had lost her job. *See* FAC ¶ 32 (alleging that she was laid off on March 12, 2009). On or about the same day, FAT entered the real property at issue without notifying Ms. Clemens and changed the locks on the doors. *See* FAC ¶ 29.

## II. DISCUSSION

### A. Legal Standard

In evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all well-pled allegations in the complaint and view them in the light most favorable to the plaintiff. *See Moss v. United States Secret Serv.*, 572 F.3d 962, 967-68 (9th Cir. 2009). Generally, a court "may not consider any material beyond the pleadings." *Lee*, 250 F.3d at 688. However, there are two exceptions to this rule. First, a court may take judicial notice of matters of public record. *See id.* at 688-89. Second, a court may consider documents which are not attached to the pleadings but on which the plaintiff's complaint necessarily relies and whose authenticity is not contested. *See id.* at 688.

For a complaint to survive a motion to dismiss, the nonconclusory factual content of the complaint (plus reasonable inferences from that content) and that of the documents which a court may consider must plausibly suggest a claim entitling the plaintiff to relief. *See id.* at 969.

> A claim has facial plausibility . . . when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where

---

[2] In the FAC, Ms. Clemens actually refers to March 2008 but this appears to be a typographical error.

3

> a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007).

B. <u>Claim for Violation of TILA and Regulation Z</u>

The purpose underlying TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601. A claim under the TILA may be brought against a creditor, *see id.* §§ 1635, 1640, or an assignee of the creditor. *See id.* § 1641 (providing for assignee liability). TILA defines creditor as follows:

> The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

*Id.* § 1602(f).

1. <u>First Amendment Title Insurance Company</u>

In her FAC, Ms. Clemens asserts that both FAT and JPMorgan have violated TILA and its implementing regulation (*i.e.*, Regulation Z). With respect to FAT, the Court concludes that Ms. Clemens has failed to state a claim for relief as required by Rule 12(b)(6). As noted above, only creditors or assignees of creditors may be sued. It is clear, based on the allegations in the FAC, that FAT is neither. Rather, FAT's only role in the underlying events has been as trustee for the first deed of trust. Accordingly, the Court dismisses the TILA/Regulation Z claim against FAT with prejudice.

///
///
///

2. <u>JPMorgan</u>

   a. <u>Liability for Capital One Loan</u>

As for JPMorgan, it has extended two loans to Ms. Clemens and thus does appear to be a creditor for purposes of TILA.[3] At the hearing, Ms. Clemens argued that JPMorgan should be held accountable not only for the loans that it extended but also for the original loan that she had with Capital One because, when JPMorgan provided refinancing, it thereby "absorbed" the Capital One loan. The Court disagrees. In providing refinancing, JPMorgan did not thereby become an assignee of the Capital One loan. While the refinancing may have been used to pay off the Capital One loan, what JPMorgan offered Ms. Clemens were new loans with new terms. Therefore, to the extent Ms. Clemens argues that JPMorgan is liable for any inaccurate disclosures by Capital One, that part of the TILA/Regulation Z claim is dismissed with prejudice.

   b. <u>Statute of Limitations</u>

To the extent Ms. Clemens argues that the two loans extended by JPMorgan violated TILA and Regulation Z, she fails to state a claim for relief. Based on the allegations in the FAC, the claims are time barred.

Under TILA, a plaintiff may sue for damages and/or rescission. Each remedy has its own statute of limitations. For a claim for damages, a consumer has one year from the date of consummation of the transaction to bring suit. *See id.* § 1640(e); *King v. California*, 784. F.2d 910, 915 (9th Cir. 1986). For a claim for rescission, a consumer has only three days following consummation to cancel the transaction. *See id.* § 1635(a). However, "[a] borrower's right of rescission is extended from three days to three years if the lender (1) fails to provide notice of the borrower's right of rescission or (2) fails to make a material disclosure." *Reagen v. Aurora Loan Servs.*, 2009 U.S. Dist. LEXIS 104757, at *16 (E.D. Cal. Nov. 10, 2009) (citing 12 C.F.R. § 226.23(a)(3)). "The term 'material disclosures' means the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total payments, the payment schedule,

---

[3] At the very least, JPMorgan has not asserted that it is not a creditor for purposes of the statute.

and the disclosures and limitations referred to in § 226.32 (c) and (d)." 12 C.F.R. § 226.23(a)(3) n.48.

In the instant case, the two loans with JPMorgan were consummated in September 2006. *See* Docket No. 30 (RJN, Exs. 1-2) (deeds of trust). Because Ms. Clemens did not initiate this lawsuit until June 2009, almost three years later, the claim for damages, which has a one-year statute of limitations, is clearly time barred. In her papers, Ms. Clemens argues that the limitations period should be equitably tolled but her argument is unavailing. She fails to allege facts establishing entitlement to any such tolling. Allegations describing difficulty with identifying Capital One as the lender for her original loan, *see* FAC ¶ 47, are immaterial to any claim against JPMorgan. As noted above, JPMorgan is not an assignee of the Capital One loan. To the extent Ms. Clemens contends that the JPMorgan loans were lending violations "committed in plain sight," Docket No. 44 (Opp'n at 10), then Ms. Clemens should have known of the violations at the outset of the loans. *See King*, 784 F.2d at 915 (holding that " the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA").

As for the rescission claim, as noted above, a consumer typically has only three days following consummation to cancel the loan unless, *e.g.*, material disclosures were not provided in which case the limitations period is extended to three years. Because Ms. Clemens did not file suit until June 2009, she must have pled that material disclosures, as defined by 12 C.F.R. § 226.23(a)(3) n.48, were not provided or she is time barred. In the FAC, Ms. Clemens fails to allege that JPMorgan failed to make material disclosures as defined by 12 C.F.R. § 226.23(a)(3) n.48.

More specifically, in the FAC, Ms. Clemens alleges that the Truth in Lending Statement for "loan one" did disclose that the interest rate was adjustable but it did not disclose that it would increase to the rate of 10%. FAC ¶ 46. She also alleges that the Truth in Lending Statement for the "second loan" did disclose an adjustable interest rate but it did not "show the negative amortized variable rate." FAC ¶ 46. As a preliminary matter, the Court notes that it is not clear that either of these Truth in Lending Statements pertained to the JPMorgan loans as opposed to, *e.g.*, the Capital One loan or the GMAC loan.

1 Even if they did, 12 C.F.R. § 226.23(a)(3) n.48 does not require disclosure of specific
2 interest rates. Rather it requires disclosure of, *e.g.*, the annual percentage rate. *See Smith v.*
3 *Anderson*, 801 F.2d 661, 663 (4th Cir. 1986) (noting that "'APR' likewise differs from the general
4 definition of interest rate because it considers, by definition, a broader range of finance charges
5 when determining the total cost of credit as a yearly rate"); *see also Jordan v. Paul Fin., LLC*, No. C
6 07-04496 SI, 2009 U.S. Dist. LEXIS 56701, at *17 (N.D. Cal. July 1, 2009) (indicating that "only
7 one of the required disclosures regarding variable-rate loans -- that the transaction contains a
8 variable-rate feature -- is considered 'material' such that it triggers the extended rescission period").
9 Moreover, courts have held that (1) while "[t]he disclosure for certain variable rate transactions
10 'must be provided at the time of the application form is provided or before the consumer pays a
11 non-refundable fee, whichever is earlier,'" there is no requirement that the disclosure must be in the
12 Truth in Lending Statement itself, *Reagen v. Aurora Loan Servs.*, No.: 1:09-cv-00839-OWW-DLB,
13 2009 U.S. Dist. LEXIS 107495 , at *3 (E.D. Cal. Nov. 18, 2009) (quoting 12 C.F.R. § 226.10), and
14 (2) 12 C.F.R. § 226.23(a)(3) n.48 does not require disclosure of the risk of negative amortization.
15 *See id.* at *4; *Jordan*, 2009 U.S. Dist. LEXIS 56701, at *18-19. Since there was no alleged failure to
16 disclose material terms by JPMorgan, the statute of limitations bars the rescission claim.

17 The Court therefore dismisses the TILA/Regulation Z claim against JPMorgan as time
18 barred. However, the dismissal shall be without prejudice -- *i.e.*, the Court shall give Ms. Clemens
19 an opportunity to amend the claim, bearing in mind that the amended complaint must contain
20 allegations establishing that the claim, whether for damages or rescission, is not time barred.

21 Should Ms. Clemens amend her TILA/Regulation Z claim seeking the remedy of rescission,
22 the Court notes, for Ms. Clemens's benefit, that Bank of America now appears to be the owner of
23 the first JPMorgan loan and related first deed of trust, having been assigned such by JPMorgan. *See*
24 Docket No. 30 (RJN, Ex. 5) (assignment of deed of trust). Thus, to the extent that Ms. Clemens
25 seeks return of the property as part of the rescission, it may be necessary to join the Bank of
26 America. *See* Fed. R. Civ. P. 19(a). Of course, Ms. Clemens may still have a partial rescission
27 remedy with respect to JPMorgan since it appears to be the owner of the second loan and related
28 second deed of trust. Moreover, if the first loan is rescinded, then JPMorgan may have to return

finance charges paid by Ms. Clemens. *See Barrett v. JP Morgan Chase Bank, N.A.*, 445 F.3d 874, 878 (6th Cir. 2006) ("[T]he Act gives the borrower who rescinds an eligible loan transaction the right to void the security interest and the right to recover statutorily identified finance charges incurred in the transaction."); *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 702 (9th Cir. 1986) ("Under a TILA rescission, the security interest is dissolved, the lender returns the borrower's payments, and the borrower returns the loan proceeds, less any 'finance or other charge.'"); *Riopta v. Amresco Residential Mortg. Corp.*, 101 F. Supp. 2d 1326, 1336 (D. Haw. 1999) ("[B]ecause the Court has found rescission appropriate, the Court concludes that Plaintiffs are entitled to recover all finance and interest charges associated with the mortgage.").

As a final point, the Court notes that it is not, at this juncture, ruling on JPMorgan's contention that the TILA/Regulation Z rescission claim should be dismissed because Ms. Clemens has failed to allege that she has the ability to tender the loan proceeds. *See* Docket No. 30 (Mot. at 7). *Compare Garcia v. Wachovia Mortg. Corp.*, No. 2:09-cv-03925-FMC-FMOx, 2009 U.S. Dist. LEXIS 99308, at *10 (C.D. Cal. Oct. 14, 2009) (stating that " the majority of Courts to address the issue recently have required that borrowers allege an ability to tender the principal balance of the subject loan in order to state a claim for rescission under TILA"), *with Singh v. Washington Mut. Bank*, No. C-09-2771 MMC, 2009 U.S. Dist. LEXIS 73315, at *7-11 (N.D. Cal. Aug. 19, 2009) (rejecting JPMorgan's contention that rescission claim should be dismissed because plaintiffs did not allege they have the ability to repay the funds they received under the loan); *ING Bank v. Ahn*, C 09-995 TEH, 2009 U.S. Dist. LEXIS 60004, at *5-6 (N.D. Cal. July 13, 2009) (stating that "*Yamamoto* did not hold that a district court must, as a matter of law, dismiss a case if the ability to tender is not pleaded[;] [r]ather, all of these cases indicate that it is within the trial court's discretion to choose to dismiss where the court concludes that the party seeking rescission is incapable of performance"). Given the case law cited above, however, Ms. Clemens is forewarned that, if she is not able to allege and demonstrate an ability to tender the **principal** balance, she will not be entitled to rescission.

B.     Claim for Violation of California Civil Code § 2923.52

The California Foreclosure Prevention Act postpones a notice of sale under a deed of trust for certain loans for ninety days. *See* Cal. Civ. Code § 2923.52. Postponement is required only where all of the following conditions exist:

> (1) The loan was recorded during the period of January 1, 2003, to January 1, 2008, inclusive, and is secured by residential real property.
>
> (2) The loan at issue is the first mortgage or deed of trust that the property secures.
>
> (3) The borrower occupied the property as the borrower's principal residence at the time the loan became delinquent.
>
> (4) The notice of default has been recorded on the property.

*Id.*

Ms. Clemens contends that, in her case, all four conditions are satisfied and that Defendants violated § 2923.52 by attempting to go to a trustee sale before the ninety-day postponement required by that section. *See* FAC ¶ 64. The problem for Ms. Clemens is that, even if all four conditions are met, the statute is not applicable to her case because it did not become operative until June 15, 2009,[4] *see Kamp v. Aurora Loan Servs.*, No. SACV 09-00844-CJC (RNBx), 2009 U.S. Dist. LEXIS 95245, at *7 (C.D. Cal. Oct. 1, 2009); *see also* http://www.corp.ca.gov/fsd/cfp/default.asp (last visited 11/23/2009) – *i.e.*, after the notice of default and notice of sale were already issued in the instant case.

The Court also notes that, with respect to JPMorgan, dismissal of the § 2923.52 claim is appropriate on an independent ground. As JPMorgan points out, § 2923.52 contains an applied-for exception to the ninety-day moratorium which allows a mortgage loan servicer to apply for an exemption. *See* Cal. Civ. Code § 2923.52(b) ("This section does not apply to loans serviced by a

---

[4] Section 2923.52 specifically provides that it does not become operative until "'14 days after the issuance of regulations . . . by the commissioner pursuant to subdivision (d) of Section 2923.53." *See* Cal. Civ. Code § 2923.52(d); *see also id.* § 2923.53(k) (defining commissioner). Section 2923.53(d) in turn provides that "[t]he commissioner shall adopt, no later than ten days after this section takes effect, . . . regulations to clarify the application of this section and Section 2923.52." *Id.* § 2923.53(d). The regulations were issued on June 1, 2009, *see* 10 Cal. Code Regs. § 2031.1 *et seq.*, and fourteen days thereafter is June 15.

1  mortgage loan servicer if that mortgage loan servicer has obtained a temporary or final order of
2  exemption pursuant to Section 2923.53 that is current and valid at the time the notice of sale is
3  given."). Upon receipt of an initial application for exemption, the commissioner shall issue a
4  temporary order of exemption; if the commissioner ultimately concludes that the servicer has a
5  comprehensive loan modification program that meets certain requirements, then the commissioner
6  will issue a final order of exemption. *See id.* § 2923.53(b)(3).

7  JPMorgan has provided evidence establishing that it was granted an exemption. *See* Docket
8  No. 30 (RJN, Ex. 8) (listing JPMorgan as one of the banks exempted from § 2923.52).[5] Although
9  Ms. Clemens is correct in noting that JPMorgan was not recognized as an exempt organization until
10 June 15, 2009,[6] that fact is immaterial because it simply reflects that JPMorgan has been exempt
11 since the date that § 2923.52 became operative.

12 Accordingly, the Court dismisses the § 2923.52 claim against both FAT and JPMorgan with
13 prejudice.

14 C.   Claim for Violation of California Business & Professions Code § 17200

15 California Business & Professions Code § 17200 prohibits unfair competition, which is
16 defined as, *inter alia*, "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. &
17 Prof. Code § 17200. Defendants make several challenges to the § 17200 pled by Ms. Clemens in her
18 FAC.

19 First, Defendants argue that Ms. Clemens lacks standing to bring the claim. Under § 17204
20 of the Code, only "a person who has suffered injury in fact and has lost money or property as a result
21 of the unfair competition" has standing to bring suit. *Id.* § 17204. According to Defendants, Ms.
22 Clemens lacks standing because there has been no foreclosure as of yet and she is still the owner of
23 the real property at issue. The Court does not agree. It is undisputed that foreclosure proceedings

---

[5] This list is published online. *See* Dep't of Corp., Exemptions under Department of Corporations, Nov. 18, 2009, http://www.corp.ca.gov/FSD/CFP/default.asp (last visited 11/23/2009). The Court takes judicial notice of this official government publication. Ms. Clemens has not disputed its accuracy.

[6] JPMorgan was given temporary exemption on June 15, 2009. Later, it received permanent exemption on July 7, 2009. *See* Docket No. 30 (RJN, Ex. 8).

were initiated which put Ms. Clemens's interest in the property in jeopardy; this fact issufficient to establish standing as this Court has previously held. *See Sullivan v. Washington Mut. Bank, FA*, No. C-09-2161 EMC, 2009 U.S. Dist. LEXIS 104074, at *13 (N.D. Cal. Oct. 23, 2009).

Second, Defendants contend that, standing aside, the § 17200 claim must be dismissed because the statute bars only unlawful, unfair, or fraudulent business practices, not isolated acts, and Ms. Clemens has not alleged any pattern or course of conduct by either FAT or JPMorgan. The Court finds this argument unavailing as well. Section 17200 by its terms bars not only unlawful or unfair business *practices* but also unlawful or unfair business *acts*. *See* Cal. Bus. & Prof. Code § 17200. A California Court of Appeal has specifically explained that,

> [i]n response to the California Supreme Court's 1988 ruling that a 'business practice' under Business and Professions Code section 17200 must encompass more than a single transaction, the Legislature amended the statute in 1992 to provide that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice. . . ." The California Supreme Court has interpreted the 1992 amendment as overruling that part of *Van De Kamp* that interpreted the statute to require more than a single "act." Accordingly, under the current version of the statute, even a single act may create liability.

*UFW of Am. v. Dutra Farms*, 83 Cal. App. 4th 1146, 1163 (2000); *see also Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965, 969 n.3 (1997) (stating that "[t]he plain meaning of the amendment, as enacted, is that the UCA now covers single acts of misconduct").

Third, Defendants argue that, to the extent Ms. Clemens asserts unlawful business practices, the § 17200 claim must fail because both the TILA and § 2953.52 claims have been dismissed. Here, the Court agrees. Where there is no predicate law violation, there is no unlawful business practice or act for purposes of § 17200. *See Distor v. US Bank Na*, No. C 09-02086 SI, 2009 U.S. Dist. LEXIS 98361, at *20-22 (N.D. Cal. Oct. 22, 2009).[7]

This leaves only the issue of whether Ms. Clemens has adequately alleged an unfair business act. Defendants argue that Ms. Clemens has failed to state a claim for relief because she has not

---

[7] The Court agrees with the *Distor* court that, if a TILA claim is barred by the statute of limitations, then it may not be used as a predicate UCL violation. *See Distor*, 2009 U.S.ест. LEXIS 98361, at *21; *see also Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001 (9th Cir. 2008), 1007 n.3 (9th Cir. 2008) (noting that "[a]n attempt by Appellants to go outside the congressionally enacted limitation period of TILA is an attempt to enforce a state regulation in an area expressly preempted by federal law").

11

alleged unfairness as defined by the California Supreme Court in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999) -- *i.e.*, "the word 'unfair' in [§ 17200] means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Id.* at 187. *Cel-Tech*, however, was a § 17200 case involving competitors, not one involving a consumer as here. *See id.* at 187 n.12 (emphasizing that "[t]his case involves an action by a competitor alleging anticompetitive practices" and that "[o]ur discussion and this test are limited to that context"; adding that "[n]othing we say relates to actions by consumers").

Since *Cel-Tech*, "[t]he California courts have not yet determined how to define 'unfair' in the consumer action context." *Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 736 (9th Cir. 2008). Some courts have adopted the *Cel-Tech* standard. Others have not and continued to use instead the more generous balancing approach that preceded *Cel-Tech* -- *i.e.*, balancing the harm to the consumer against the utility of the defendant's practice. Still others have adopted a middle ground. *See id.*; *see also Camacho v. Automobile Club of S. Cal.*, 142 Cal. App. 4th 1394, 1402 (2006) (indicating that the balancing approach is too amorphous, but also rejecting the proposition that, in a consumer case, a practice is unfair only if tethered to specific constitutional, statutory or regulatory provisions). Under the middle ground test, there is unfairness where (1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury is one that the consumer could not reasonably have avoided. *See id.* at 1403. The Ninth Circuit has expressed some doubt about the middle ground test. *See Lozano*, 504 F.3d at 736 (agreeing that the balancing approach seems to have rejected as a result of *Cel-Tech* but expressing disagreement with the middle ground test, at least based on the circumstances before the court).

For purposes of this opinion, the Court need not make any conclusion about what is the appropriate test for unfairness in a consumer case because, even if the Court were to adopt the balancing approach – which is most favorable to Ms. Clemens – she still fails to state a claim for relief.

With respect to JPMorgan, the thrust of Ms. Clemens's unfairness claim is that JPMorgan failed to respond to her multiple requests for loan modification (*e.g.*, in December 2008 and in March and April 2009) until on or about May 15, 2009, at which point she had already lost her job. *See* FAC ¶¶ 25, 32, 100. However, Ms. Clemens has failed to explain why JPMorgan had a duty to offer a loan modification. *Cf. Maguca v. Aurora Loan Servs.*, No. SACV 09-1086 JVS (ANx), 2009 U.S. Dist. LEXIS 104251, at *7 (C.D. Cal. Oct. 28, 2009) (noting that plaintiff did not identify under what duty defendant was required to give a loan modification or forbearance; acknowledging plaintiff's suggestion that defendant had a duty to do so as a recipient of funds from the federal Troubled Asset Relief Program, but noting that plaintiff did not "explain how receipt of TARP funds gives rise to a cause of action against the recipient by a borrower"); *Mertan v. American Home Mortg. Servicing, Inc.*, No. SACV 09-723 DOC (PJWx), 2009 U.S. Dist. LEXIS 99024, at *28-29 (C.D. Cal. Oct. 13, 2009) (rejecting plaintiffs' assertion that defendants were unjustly enriched because they received TARP funds but did not provide plaintiffs with a loan modification; noting that money conferred on defendants came from the federal government, not plaintiffs). This is particularly true, if as found herein, Ms. Clemens has not stated a legal claim against JPMorgan under any applicable statute such as TILA or California Civil Code § 2932.52.

As for FAT, Ms. Clemens appears to argue unfairness based on (1) improper surveillance by FAT and (2) FAT's thereafter entering her property to change the locks on the doors without notifying her.[8] Ms. Clemens has failed to establish facial plausibility for her claim of improper surveillance. As noted above, facial plausibility requires "more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Moss*, 572 F.3d at 969. As for the claim that FAT improperly entered Ms. Clemens's property, even if such conduct were unfair for purposes of § 17200, the statute provides for only limited remedies – *i.e.*, injunctive relief and restitution. Ms. Clemens does not allege that this

---

[8] At the hearing on Defendants' motions, Ms. Clemens argued that, because of the improper surveillance, FAT knew when she would not be home and therefore changed the locks on the doors when she was not present.

13

conduct is ongoing and does not appear to be seeking either of these remedies. Instead she seems to be asking for compensatory damages for the alleged unfair conduct, a remedy not available under § 17200. *See Kaldenbach v. Mutual of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 847 (2009) (noting that "only equitable remedies are available (e.g., injunction, restitution) [under the UCL], and damages are not an available remedy").

As a final point, the Court notes that, in her papers, Ms. Clemens appears to argue that Defendants engaged in unlawful conduct by not giving her notice of the default and/or notice of the sale as required by California Civil Code § 2924 *et seq. See* Docket No. 44 (Opp'n at 2). This contention, however, was not made in the FAC and therefore the Court does not consider it. In fact, the Court notes that the FAC suggests to the contrary since Ms. Clemens alleges that she received "notices of foreclosure." FAC ¶ 26.

Accordingly, the Court dismisses the § 17200 claim against both FAT and JPMorgan. The dismissal shall be without prejudice so that Ms. Clemens will have an opportunity to amend the claim. The Court advises Ms. Clemens that, should she amend to assert unfairness based on the failure to provide her with notice of the default and/or notice of the sale, she must have a good faith belief that there was such a failure. In the absence of a good faith belief, she may be subject to sanctions pursuant to Federal Rule of Civil Procedure 11.

This order disposes of Docket Nos. 30 and 32.

IT IS SO ORDERED.

Dated: December 1, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge

14

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MONICA CLEMENS,

        Plaintiff,

    v.

J.P. MORGAN CHASE NATIONAL CORPORATE SERVICES, INC., *et al.*,

        Defendants.
_____/

No. C-09-3365 EMC

**CERTIFICATE OF SERVICE**

    I, the undersigned, hereby certify that I am an employee in the U.S. District Court, Northern District of California. On the below date, I served a true and correct copy of the attached, by placing said copy/copies in a postage-paid envelope addressed to the person(s) listed below, by depositing said envelope in the U.S. Mail; or by placing said copy/copies into an inter-office delivery receptacle located in the Office of the Clerk.

Monica Clemens
101 Anza Vista
San Francisco, CA 94115
415/271-6990
carealestate007@yahoo.com

Dated: December 1, 2009        RICHARD W. WIEKING, CLERK

        By:         /s/
           Leni Doyle
           Deputy Clerk